# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRACBEAM, L.L.C., | |
| Plaintiff, | Misc. Civil Action No. [          ] (District of Massachusetts) |
| v. | |
| GOOGLE INC., | Civil Action No. 6:13-cv-00093 (Eastern District of Texas) |
| Defendant. | |

## DEFENDANT GOOGLE, INC.'S MOTION TO COMPEL
## SKYHOOK WIRELESS, INC.

Skyhook Wireless Inc. ("Skyhook") was one of many defendants that Plaintiff TracBeam, L.L.C. ("TracBeam") sued for patent infringement in the above-captioned case.[1] TracBeam subsequently settled with Skyhook, and Google Inc. ("Google") sought discovery from Skyhook regarding the license that was entered into as part of the settlement agreement, including communications between Skyhook and TracBeam regarding that agreement. TracBeam has made such discovery relevant to damages, as it has indicated that it may rely on the settlement agreement in connection with its contentions regarding a reasonable royalty in this case. That being the case, simple fairness requires that Google be allowed to take discovery into the negotiations and discussions between TracBeam and Skyhook regarding that agreement.

While Skyhook has stated its willingness to provide the requested discovery, TracBeam has asserted that such discovery would violate a TracBeam privilege. Accordingly, Skyhook has

---

[1]   The above-captioned case was part of larger case, *TracBeam, LLC v. AT&T et al.*, 6:11-cv-00096 (E.D. Tex.) until January 2013, at which time the Court severed the *TracBeam v. Google* case into a separate civil action. When Google refers to "Defendants" in this Motion, it is referring to the Defendants in both the *TracBeam v. AT&T et al.* case and the *TracBeam v. Google* case, collectively.

stated that it will not defy TracBeam's instructions to withhold the requested discovery until the issue is resolved by the Court.

As the basis for its instructions, TracBeam asserts that California Evidence Code Section 1119—a state-law mediation privilege—applies in this case and precludes Skyhook from divulging <u>any</u> information about <u>any</u> communications between TracBeam and Skyhook.  As a matter of law, TracBeam is incorrect.  Federal—not California—privilege law governs in this federal question case.  And while some Federal courts have recognized a mediation privilege under Federal common law, these courts limit the privilege to communications during or in preparation for the mediation.  TracBeam, by contrast, is taking the position that <u>all</u> communications between TracBeam and Skyhook are subject to the privilege, even communications that occurred after the mediation and/or have no direct link to the mediation. This position is an unjustified and unsupportable expansion of the mediation privilege.

Furthermore, TracBeam has effectively waived any mediation privilege over its communications with Skyhook by indicating it may put the fruit of those communications – the TracBeam-Skyhook settlement agreement – at issue in this case.

I.    **BACKGROUND**

   A.    **Defendants' Subpoena to Skyhook**

TracBeam added Skyhook and Google as new defendants to an existing patent infringement suit on May 19, 2011.  (Dkt. 57.)  On February 15, 2013, the Court dismissed Skyhook because Skyhook and TracBeam had entered into a settlement agreement.  (Dkt. 363.) On March 5, 2013, Google subpoenaed Skyhook and requested, *inter alia*, deposition testimony about:

> All communications between You and TracBeam regarding any agreement
> between You and TracBeam or any other entity (including licenses, settlements,
> covenants not to sue, releases, immunities, and the like) and the negotiation of any

such agreement, including drafts, term sheets, or any other documentation regarding any such agreement.

(Ex. A[2] at 4.)

### B.   The Skyhook Deposition

On March 29, 2013, the date the Skyhook deposition was set to go forward, TracBeam's counsel informed Skyhook by email that it objected to "any testimony or document production by Skyhook about what was said – in writing or orally – back and forth between the parties in the lead up to the mediation, during the mediation, or in the follow up negotiations that lead to the parties' agreement" because it believes such communications are "not discoverable under California Evidence Code Section 1119." (Ex. B.)

During the deposition, TracBeam repeatedly made the same objection, stating that Defendants' questions about communications between TracBeam and Skyhook sought information that was not discoverable. Skyhook deferred to TracBeam's objections and refused to answer Defendants' questions, while stating on the record that it would be willing to do so were it not for TracBeam's objections. The following excerpt from the Skyhook deposition is illustrative:

Q:  During the negotiation of this agreement that we've marked as Exhibit No. 1091 between Skyhook and TracBeam, what did TracBeam tell Skyhook, if anything, as to the purpose for entering into this agreement?

[TracBeam's Counsel] MR. EICHMANN:  I'm going to object that that calls for information that is not admissible or discoverable under the California mediation privilege.

[Skyhook's Counsel] MS. VREELAND:  And I discuss want to state for the record that we would be willing to answer that.  I don't feel comfortable answering that over TracBeam's objections.  So given Jeff's objection, I don't

---

[2]   All Exhibits (denoted with "Ex.") are Exhibits to the Declaration of Margaret Kammerud, filed concurrently herewith.

think we can. But if -- if the parties are able to get clarification on the issue, we
would certainly be willing to.

Q.  Are you going to follow your counsel's instructions?

A.  I will.

(Ex. C at 45:21-46:16.)  Skyhook also explained that it would need "resolution from the Court"

before it would feel comfortable defying TracBeam's instructions and answering Defendants'

questions.  (*Id.* at 23:10-19.)

TracBeam took the position that all communications between Skyhook and TracBeam

were covered by the California mediation privilege, regardless of whether they occurred before,

during, or after the mediation.  (*See, e.g.*, *id.* at 23:25-24:5 ("TracBeam's position is that

Skyhook's communications with TracBeam, whether directly though the mediator or otherwise

in furtherance of the mediation, <u>before, after or during it</u>, are subject to the state mediation

privilege . . .") (emphasis added).)  In short, TracBeam objected to questions about any

communications between Skyhook and TracBeam, regardless of when they occurred, and

Skyhook refused to answer such questions due to TracBeam's objections.  Defendants were thus

unable to obtain any discovery into the communications between TracBeam and Skyhook,

including potentially critical communications relating to the TracBeam-Skyhook settlement

agreement.

But even as TracBeam prevented Defendants from discovering communications relating

to the TracBeam-Skyhook settlement agreement, TracBeam refused to stipulate that it would not

use this very agreement in its damages case:

> MS. SMITH [Defendant AT&T's counsel]: Jeff, given your objection with
> respect to communications had between the parties regarding their settlement
> agreement, do you agree, then, that TracBeam is not going to rely on this
> agreement in any way with respect to a reasonable royalty in this case?

MR. EICHMANN: No.  I can't make any stipulation regarding that.  It's not my
call.  That's an entirely separate issue.

(*Id.* at 25:9-17.)

### C.  Google's Meet-and-Confer Efforts

On April 4, 2013, Google sent TracBeam a letter regarding TracBeam's "refusal to let Skyhook testify at deposition concerning communications between Skyhook and TracBeam." (Ex. D.)  In this letter, Google explained why there was no basis for TracBeam to prevent Skyhook from testifying on this subject, and in particular why the California mediation privilege did not apply to such communications.  (*Id.* at 1.)  Nonetheless, in the interest of avoiding motion practice, Google proposed that it would not seek to compel discovery on TracBeam-Skyhook communications, if TracBeam would agree not to introduce the TracBeam Skyhook settlement agreement at trial or otherwise rely on the agreement for purposes of TracBeam's damages claim. (*Id.* at 2.)

In a brief responsive email to Google's April 4 letter, TracBeam declined to accept or even address Google's proposal.  (Ex. E.)  Meanwhile, in a telephonic meet-and-confer between Google and Skyhook on April 4, Skyhook confirmed that <u>it</u> would not even oppose a motion to compel an additional deposition.  (Kammerud Decl., ¶ 7).  Accordingly, Google hereby brings the present motion to compel.

## II.  ARGUMENTS AND AUTHORITIES

### A.  The California Mediation Privilege Does Not Apply in This Case

At the deposition, TracBeam grounded its privilege objections in the California state mediation privilege.  (*See, e.g.*, Ex. C at 23:25-24:5.)  TracBeam even stated that "[t]here's no such thing as a separate federal mediation privilege.  The Federal Rules incorporate the laws of the state with regard to issue of privilege."  (*Id.* at 20:10-13.)  But TracBeam's legal position

5

about the primacy of state privilege law is simply wrong.  In this patent infringement action,

Federal law—not California law—governs whether communications are subject to any privilege.

*See In re MSTG, Inc.*, 675 F.3d 1337, 1341 (Fed. Cir. 2012).  Indeed, the Federal Rules of

Evidence explicitly state that Federal common law governs the law of privilege in federal

question cases like this one.  Fed. R. Evid. 501 ("The common law—as interpreted by United

States courts in the light of reason and experience—governs a claim of privilege . . . ."); *see also*

Fed R. Evid. 501 Advisory Committee Note (1974) ("in criminal and Federal question civil cases,

federally evolved rules on privilege should apply since it is Federal policy which is being

enforced."); *accord Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992)

(refusing to apply California state law privilege in federal-question copyright case).

    That TracBeam and Skyhook may have agreed to be bound by the California mediation

privilege (Ex. C at 20:4-9) is of no moment.  It is self-evident that parties cannot circumvent the

Federal Rules of Evidence and shield their communications from discovery merely by agreeing

to be bound by some other body of law, such as California state privilege law.  *Cf. Sierra Foods,

Inc. v. Haddon House Food Prods., Inc.*, No. 90-6841, 1991 WL 95287, at *5 (E.D. Pa. May 29,

1991) ("Normal procedures prescribed by the Federal Rules . . . should not be circumvented or

held in abeyance by a side agreement of adversarial counsel to operate outside of the Rules in a

particular case."); *see also Farnsworth v. Sea-Land Serv., Inc.*, No. 87-5954, 1989 WL 20544, at

*2 (E.D. La. Mar. 7, 1989) ("[P]laintiff is not entitled to rely on a request from defendants as

permission to ignore the Federal Rules of Civil Procedure, nor is mere agreement of the parties

justification for circumvention of the federal rules.").

**B.    The Federal Mediation Privilege, to the Extent It Exists, Does Not Support TracBeam's Broad Privilege Claims**

Some (though not all) Federal courts have recognized a <u>Federal</u> mediation privilege under Federal common law.  However, even the courts that recognize this privilege limit it to communications during or in preparation for the mediation.  Thus, for example, communications occurring <u>after</u> the mediation are wholly unprotected, as are communication that occurred before the mediation but are not fairly deemed to be "in preparation" of it.  *See, e.g.*, *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1180 (C.D. Cal. 1998):

> [C]ommunications to the mediator and communications between parties during the mediation are protected. In addition, communications in preparation for and during the course of a mediation with a neutral must be protected.  <u>Subsequent negotiations between the parties, however, are not protected</u> even if they include information initially disclosed in the mediation. To protect additional communications, the parties are required to return to mediation.  <u>A contrary rule would permit a party to claim the privilege with respect to any settlement negotiations so long as the communications took place following an attempt to mediate the dispute.</u>

(emphasis added); *accord In re RDM Sports Group, Inc.*, 277 B.R. 415, 431 (Bkrtcy. N.D. Ga. 2002) ("The mediation privilege should operate to protect only those communications made to the mediator, between the parties during the mediation, or in preparation for the mediation.").

Contrary to this rule, TracBeam asserted blanket mediation privilege over all communications between Skyhook and TracBeam, regardless of whether such communications occurred before, during, or after the mediation.  (*See, e.g.*, Ex. C at 23:25-24:5.)  Skyhook confirmed during the deposition that some of the parties' settlement communications occurred after the date of their mediation.  (*Id.* at 14:22-15:1.)  Thus, these communications are unquestionably not protected by any Federal mediation privilege.  Skyhook also explicitly disagreed with TracBeam's position that all of the TracBeam-Skyhook communications occurring before the mediation were closely enough linked to the mediation to be subject to

privilege.  (*Id.* at 50:3-51:4.)  Nonetheless, TracBeam refused to allow Skyhook to testify about any communications between the parties, regardless of the temporal or thematic relationship between such communications and the mediation.  This position is wholly unjustified under Federal law, even in those Federal courts that recognize some form of Federal mediation privilege.

### C.   TracBeam Effectively Waived the Mediation Privilege By Stating That It Might Rely on the TracBeam-Skyhook Settlement Agreement

For the reasons stated above, the Federal mediation privilege does not apply to communications occurring after the mediation, nor does it apply to communications that were not made in direct preparation for the mediation or during the mediation.  Thus, Google is entitled to discovery of these "non-mediation" communications as a matter of course.

But even for the subset of TracBeam-Skyhook communications that might otherwise be subject to a Federal mediation privilege, Google is entitled to discovery of such communications in this case because TracBeam has stated that it may rely on the TracBeam-Skyhook settlement agreement in connection with its assessment of a reasonable royalty.  TracBeam cannot rely on the TracBeam-Skyhook settlement agreement in an attempt to prove its own position on a reasonable royalty while barring Google from taking discovery regarding that same agreement. This is fundamentally unfair and would greatly prejudice Google.

Indeed, it is hornbook law that a party cannot maintain privilege over communications relating to the formation of a contract, if the circumstances and party intentions surrounding the formation of that contract are put at issue in the litigation.  *See* 1 Testimonial Privileges § 1:87 (updated April 2012) ("[P]rivilege has been deemed waived in cases where circumstances surrounding the formation of a contract or the contracting parties' intentions are put at issue. . .").  By indicating that it might rely on the TracBeam-Skyhook settlement agreement, TracBeam has

thus put the negotiation and formation of that agreement "at issue" and cannot invoke mediation privilege to bar discovery into communications on this subject.[3]

### III.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court compel Skyhook to answer deposition questions regarding its communications with TracBeam.   TracBeam cannot "have it both ways" by relying on the TracBeam-Skyhook settlement agreement to its own benefit while preventing discovery regarding that agreement.

---

[3]   The settlement agreement does not have a choice-of-law clause.  But under the laws of both Colorado (TracBeam's principal place of business) and Massachusetts (Skyhook's principal place of business), extrinsic or parol evidence is admissible to help interpret a written contract. *See Tripp v. Cotter Corp.*, 701 P.2d 124, 126 (Colo. App. 1985) ("[F]or purposes of interpreting, explaining, or applying contractual terms, parol evidence may be admissible."); *Parrish v. Parrish,* 30 Mass. App. Ct. 78, 86 (1991) ("Extrinsic evidence bearing upon the background and purpose of the parties, as well as their understanding of the meaning of particular language used in the contract, may be considered both in the construction of ambiguous contract language and in resolving uncertainties in applying the terms of the written contract to the subject matter."). Thus, there can be little doubt that communications between the contracting parties are "at issue" whenever their agreement itself is "at issue."

Dated:      April 19, 2013                          Respectfully submitted,

                                                    By:     */s/Anastasia Fernands*
                                                            Anastasia Fernands (State Bar No.
                                                            633131)
                                                            anastasiafernands@quinnemanuel.com
                                                            **QUINN EMANUEL URQUHART**
                                                                **& SULLIVAN LLP**
                                                            51 Madison Ave., 22nd Floor
                                                            New York, NY 10010
                                                            Tel: 212-849-7000
                                                            Fax: 212-849-7100

                                                            Melissa J. Baily (Pro Hac Vice
                                                            pending)
                                                            melissabaily@quinnemanuel.com
                                                            **QUINN EMANUEL URQUHART**
                                                                **& SULLIVAN LLP**
                                                            50 California Street, 22nd Floor
                                                            San Francisco, CA 94111
                                                            Tel: 415-875-6600
                                                            Fax: 415-875-6700

                                                            Joshua L. Sohn (Pro Hac Vice pending)
                                                            joshuasohn@quinnemanuel.com
                                                            **QUINN EMANUEL URQUHART**
                                                                **& SULLIVAN LLP**
                                                            1299 Pennsylvania Ave., Suite 825
                                                            Washington, D.C. 20004
                                                            Tel: 202-538-8000
                                                            Fax: 202-538-8100

                                                            **Attorneys for Defendant**
                                                            **Google, Inc.**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(a)(2), counsel for Google hereby certifies that they met and conferred with opposing counsel in an attempt to narrow the issues and avoid motions practice. Google's conferences and attempts to reach agreement are detailed in Section I(C) of this motion and the attached Declaration of Margaret Kammerud.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Google hereby requests oral argument.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Local Rule 7.3, Google hereby certifies that it has no parent companies and that no other publicly-traded company owns more than 10% of Google's stock.

## CERTIFICATE OF SERVICE

Google hereby certifies that it served a copy of this motion, and all supporting papers, on counsel of record for both Skyhook and TracBeam.


Dated:  April 19, 2013                                    By: _/s/Anastasia Fernands_
                                                              Anastasia Fernands